UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ANTHONY SOLLAZZO,                              :
                                               :        **OPINION AND ORDER**
                        Plaintiff,             :
                                               :          15 Civ. 0252 (ER)
            -against-                          :
                                               :
JUST SALAD RESTAURANT,                         :
                                               :
                        Defendant              :
-------------------------------------------------------------x

Ramos, D.J.:

Anthony Sollazzo ("Plaintiff"), filed a *pro se* Complaint in this action on January 13,

2015 alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"), against his employer Just Salad

Restaurant ("Defendant") for employment discrimination based on race, hostile work

environment based on religion, and retaliation based on Plaintiff's complaints to management

about the alleged discrimination.  Before the Court is Defendant's motion to dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court converts Defendant's motion

into one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure

based on the introduction of material extrinsic to the Complaint.  Defendant's converted motion

is GRANTED in part and DENIED in part.

I.      **Factual Background**[1]

        Plaintiff is an African American Muslim man who was employed as a bicycle delivery

person by Defendant from March until November 2013.  Compl. III.C; Pl.'s Letter to the Court

---

[1] As discussed *infra* at Section III(A), the Court converts Defendant's motion to dismiss into a motion for summary
judgment.  Accordingly, the facts are taken from the Complaint and from the affidavits and exhibits attached to
Defendant's and Plaintiff's memoranda.  Because Plaintiff is acting *pro se*, the Court also takes into account
allegations made by Plaintiff in his memorandum in support of his opposition to Defendant's motion to dismiss
("Pl.'s Opp'n").  *See Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998).

dated May 4, 2015 (the "May 4th Letter"); Affidavit of Mina Abdelsayed in support of Defendant's motion to dismiss ("Abdelsayed Aff.") ¶ 11.  Plaintiff was employed at Defendant's 34th Street location, although he occasionally substituted at Defendant's other Manhattan locations.  Compl. III.B; *see also* Hr'g Tr. 4:18-23.  On November 10, 2013 he was transferred to the 58th Street location allegedly in retaliation for complaints made to his manager.[2]  Compl. III.C; Abdelsayed Aff. ¶ 5; Pl.'s Opp'n at ¶ 4.  Plaintiff was terminated from Defendant's employment nine days later on November 19, 2013.  Abdelsayed Aff. ¶ 11.

Plaintiff alleges that while he was employed at the 34th Street location he was "continuously ridiculed" by his manager, Matthew Dickman[3], who made "harassing" and "religiously mocking statements" to Plaintiff and used "profane language to degrade" Plaintiff.  Compl. III.C; Pl.'s Opp'n at ¶ 3; May 4th Letter.  During the eight month period that Plaintiff was under his supervision, Dickman allegedly made three comments that caused Plaintiff embarrassment:  (1) "[h]ey Anthony, its Ramadan right? So your [sic] hungry all day huh[]," (2) "I don['] think this salad has pork in it[]," and (3) "don't be an asshole."  Compl. III.C; Pl.'s Opp'n at ¶ 3.

Plaintiff also alleges that African American delivery persons at the 34th Street location earned less than Hispanic delivery persons based on the fact that the Hispanic employees were

---

[2] The Complaint alleges that Plaintiff's claims arise from his employment at Defendant's 34th Street location and his transfer to the 86th Street location.  *See* Compl. at III.C; May 4th Letter.  However, in Plaintiff's Opposition, he asserts that he was employed at the 37th Street location and transferred to the 58th Street location.  *See* Pl.'s Opp'n at ¶¶ 1, 7, 8.  Because the actual location of the stores are irrelevant, the Court refers to the store where Plaintiff was originally employed as the 34th Street location and the store he was transferred to as the 58th Street location.

[3] Plaintiff refers to the 34th Street store manager as Matthew Dick, Compl. III.C; May 4th Letter; Pl.'s Opp'n at ¶ 6, while Defendant refers to the store manager as Matthew Dickman.  *See* Def.'s Mem. at 3.  The Court refers to the 34th Street store manager as Dickman.

given larger deliveries resulting in higher tips than the African American employees.[4]  Compl. III.C; May 4th Letter; Pl.'s Opp'n at ¶ 7.  Plaintiff alleges that unfair delivery assignments resulted in the Hispanic employees receiving six times the amount of money earned in tips than the African American employees even though both groups worked the same hours.  Pl.'s Opp'n at ¶ 9(a).  Plaintiff also contends that he made more money when he substituted at locations other than the 34th Street store.  Hr'g Tr. 4: 18-20.

Plaintiff allegedly voiced his concerns regarding the wage discrepancies to the 34th Street store's managers, but his complaints went unanswered.  Compl. III.C.  After insisting that "the company should call a meeting" to address the issue, Dickman held a meeting in early November 2013, during which several employees allegedly voiced the same concerns as Plaintiff.  Id.; Pl.'s Opp'n at ¶ 7.  In an attempt to remedy the situation, Dickman implemented a delivery assignment policy that required deliveries to be assigned in order based on a list of delivery persons on duty.  May 4th Letter.  Plaintiff, however, contends that the policy implemented by Dickman was a preexisting common policy that was in place across all of Defendant's locations and should have been followed at the 34th Street location.  Pl.'s Opp'n ¶ 7.  Moreover, even after the policy was implemented, the Hispanic employees were still assigned larger deliveries to because they "were better riders."  May 4th Letter.  Plaintiff continued to complain to management.  Compl. III.C.

Soon after the November 2013 meeting, Plaintiff alleges that he was approached by Dickman and an unknown manager, who stated "well since you think you made more money at another store, were [sic] gonna [sic] put you at [58th] Street."  Compl. III.C.  However, in Plaintiff's Opposition the statements he attributes to the managers are slightly different.  He

---

[4] At a conference held before the Court on May 14, 2015, Plaintiff stated that all delivery persons were paid $6 an hour.  Hr'g Tr. 4:18-23.

asserts that Dickman and the unknown manager said, "[y]ou think we don't tips [sic] here?  We are going to send you to 58th Street," Pl.'s Opp'n at ¶ 6, or "We are sending you to 58th Street, see how many tips you get there."  *Id.* at ¶ 9(b).  Plaintiff was transferred to the 58th Street location allegedly a week after the meeting was held.  Compl. III.C; May 4th Letter (Plaintiff asserts that he was transferred within the "following days" after the meeting).

Plaintiff was not employed at the 58th Street location for long.  On November 10, 2013, his first day of work at the 58th Street store, Plaintiff arrived one and a half hours late.[5] Abdelsayed Aff. ¶ 6, Ex. E; Pl.'s Opp'n at ¶ 4.  Based on the Employee Counseling Form attached to Defendant's motion detailing the incident, when Plaintiff arrived he allegedly said "I do not feel like working today."  Abdelsayed Aff. Ex. E.  Plaintiff, however, asserts that because it was his first day at the new location, he could not have received his work schedule and, presumably, that was why he was late.  Pl.'s Opp'n at ¶ 4.  Three days later, on November 13, Plaintiff did not show up for work at all and received another warning.  Abdelsayed Aff. ¶ 7, Ex. F; Def.'s Mem. at 4.  According to the Employee Counseling Form for this incident, Plaintiff allegedly said he did not come to work because "he is Muslim and he does not work on Friday." Abdelsayed Aff. Ex. F.  On November 18, Plaintiff arrived at work ten minutes before his shift and, while out of uniform, clocked in early, allegedly in violation of Defendant's policy. Abdelsayed Aff. ¶ 9, Ex. G.  Plaintiff was given a final warning.  *Id.*  The next day, on November 19, Plaintiff arrived to work one hour late because he allegedly was unaware of his scheduled shift and was immediately terminated.  Abdelsayed Aff. ¶ 11, Ex. H.

---

[5] Abdelsayed's declaration and Defendant's motion to dismiss allege that Plaintiff was one hour late.  Abdelsayed Aff. ¶ 6; Def.'s Mem. at 4.  However, both the Employee Counseling Form, which described the November 10 incident and Plaintiff's Opposition, allege that Plaintiff was one and a half hours late.  Abdelsayed Aff. Ex. E.; Pl.'s Opp'n at ¶ 4.

Plaintiff claims that he was transferred to and ultimately fired from the 58th Street location in retaliation for complaining about wage discrepancies at the 34th Street location. Compl. III.C.  As support, Plaintiff identifies a comment in the Employee Counseling Form reporting the November 13 incident, which states that the "[e]mployee has been transferred to this location as a second and final chance to clean up his act and respect his job."  Abdelsayed Aff. Ex. F.   Plaintiff also contends that other employees who missed entire work days without calling were not disciplined and that employees at the 34th Street location were allowed to clock in early.  Pl.'s Opp'n at ¶ 8; May 4th Letter.

## II.    Procedural Background

On January 13, 2015 Plaintiff timely commenced this action by filing the *pro se* Complaint.  *See* Doc. 1.  On May 13, 2015, the Court granted Defendant leave to file its motion to dismiss.  Defendant filed the instant motion on June 4, 2015.

## III.   Standard of Review

### A.    Extrinsic Materials

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken."  *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Defendant attaches the following documents to its motion to dismiss:  (1) an affidavit of the General Manager of the store Plaintiff was transferred to, Mina Abdelsayed; Abdelsayed Aff., (2) four Employee Counseling Forms recording disciplinary action against Plaintiff, *id.* Exs. E-G; (3) an affidavit of the Director of Human Resources and Recruiting for Defendant,

Rachel Adams ("Adams Aff."); (4) Defendant's Employee Handbook, *id.* Ex. C; and (5) an electronic receipt confirming that Plaintiff received the Employee Handbook, *id.* Ex. D.

None of these materials, however, may be considered on a motion to dismiss because Plaintiff's Complaint makes no reference to them and they are not the kind courts usually take judicial notice of.  Accordingly, the Court must either ignore these materials in deciding the motion or convert the motion into one for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

If a court wishes to convert a motion to dismiss into a motion for summary judgment, it must provide "sufficient notice to an opposing party and an opportunity for that party to respond." *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)).  Ordinarily, the court is not required to provide parties with formal notice of conversion when the parties "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and were neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings." *Id.* (quoting *Villante v. Dep't of Corrections of City of New York*, 786 F.2d 516, 521 (2d Cir. 1986)).  However, the Second Circuit recognizes that notice is "particularly important" when a party is *pro se* because a *pro se* litigant "may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983).  Accordingly, "unequivocal" notice of the consequences of a conversion to summary judgment must be provided. *Id.*  The "unequivocal" notice requirement may be

satisfied where such notice meets the requirements of Local Civil Rule 12.1 of the Southern District of New York.  That rule directs represented parties who move to dismiss against a party proceeding *pro se* to provide notice that the matter may be treated as a motion for summary judgment and to further explain what the plaintiff must do to oppose summary judgment.  *See Hernandez*, 582 F.3d at 308 n.2.

Here, Defendant's notice of motion to dismiss followed the requirements of Local Rule 12.1 by providing Plaintiff with the text of Rule 56, provided sufficient notice that his motion may be converted to a motion for summary judgment, and the consequences of such a conversion.  *See* Def.'s Notice of Mot. (Doc. 13).  Accordingly, this Court converts the Defendant's motion to dismiss into a motion for summary judgment.[6]

### B.    General Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the litigation under the governing law."  *Id.* (quoting *Miner v. Clinton Cty. N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v.*

---

[6] The Court acknowledges that no discovery has occurred in this action and that other courts in this district have declined to convert a motion to dismiss into one for summary judgment on this ground.  *See, e.g.*, *Brooks v. Panas*, No. 14 Civ. 4835 (PKC), 2016 WL 614684, at *1 n.1 (E.D.N.Y. Feb. 16, 2016) ("The Court declines to consider the extrinsic materials submitted by Defendant and similarly declines to convert this motion into one for summary judgment, despite Defendant's notification to Plaintiff, pursuant to Local Rule 56.2, that the Court might do so. There has been no discovery in this case, Plaintiff is *pro se*, and it is far from clear that Plaintiff fully understands the full consequences of a summary judgment motion."); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) ("The Court also declines to convert the instant motion into a motion for summary judgment since discovery has not yet commenced.").  The Court, however, finds that based on the facts of this motion, conversion is proper and the issue of discovery may be considered as part of the motion for summary judgment.

*Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### C.    **Special Solicitude for *Pro se* Litigants**

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment."  *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988)).  *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621 (SS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants).  Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Whitley v Albers*, 475 U.S. 312, 319 (1986)).  "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### D.    Additional Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); however, "[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation."  *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011) (summ. order) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)).  Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).  Furthermore, "[e]ven in the discrimination context, [ ] a plaintiff must

provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137; *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir.2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  "Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer." *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010) (citing *Budde v. H & K Distrib. Co.*, 216 F.3d 1071 (2d Cir. 2000)).

## IV.     Discussion

### A.      Equal Pay Act

Plaintiff alleges that Defendant violated the Equal Pay Act because African American delivery persons earned less than their Hispanic co-workers.  Compl. III.C; Pl.'s Opp'n at ¶ 7. The Equal Pay Act, however, prohibits discrimination against workers solely "on the basis of sex." *See* 29 U.S.C. § 206(d)(1) (" No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions

. . . .”); *Belgrave v. City of N.Y.*, No. 95 Civ. 1507 (JG), 1999 WL 692034, at *24 (E.D.N.Y.

Aug. 31, 1999) (“[C]laims under the Equal Pay Act asserting disparities based on national origin,

race, or any factor other than sex must fail.”); *Johnson-Memoli v. ADT Sec. Services, Inc.*, No. 97

Civ. 5397 (DC), 1998 WL 352591, at *4 (S.D.N.Y June 26, 1998) (“[T]he Equal Pay Act …

[was] designed to remedy disparities in pay between the sexes and not any disparities based on

race.”).  Accordingly, Defendant’s motion for summary judgment on Plaintiff’s Equal Pay Act

claim is GRANTED.

### B.     Title VII

Title VII makes it “an unlawful employment practice for an employer . . . to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual’s race, color, religion, sex, or national origin.”  42

U.S.C. § 2000e–2(a)(1).  “Thus, when the workplace is permeated with ‘discriminatory

intimidation, ridicule, and insult,’ that is sufficiently severe or pervasive to alter the conditions of

the victim’s employment and create an abusive working environment, Title VII is violated.”

*Risco v. McHugh*, 868 F. Supp. 2d 75, 115 (S.D.N.Y. 2012) (quoting *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993)).

Plaintiff’s Title VII claims for hostile work environment, discrimination, and retaliation

are properly analyzed under the three-step burden-shifting framework set forth by the Supreme

Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Jute v. Hamilton

Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (applying *McDonnell Douglas* to retaliation

claim); *Chick v. Cty. Of Suffolk*, 546 F. App’x 58, 59 (2d Cir. 2013) (summ. order) (applying

*McDonnell Douglas* analysis to hostile work environment claim).  Under the *McDonnell

Douglas* framework, a plaintiff alleging discrimination under Title VII must first demonstrate a

*prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  The Second Circuit

has explained that a plaintiff's burden at this stage is *de minimus*. *Abdu–Brisson*, 239 F.3d at 467. Nonetheless, in order to state a *prima facie* case for discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd,* 51 F. App'x 55 (2d Cir. 2002), and "cannot meet its burden through reliance on unsupported assertions." *Goenaga,* 51 F.3d at 18. "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000) (quoting *Bikerstaff v. Vassar College*, 196 F.3d 435, 451-52 (2d Cir. 1999)). "A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge," is also insufficient. *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Civ. 9959 (WP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008).

If a plaintiff successfully presents a *prima facie* case of discrimination, the defendant must then rebut the presumption by offering legitimate and non-discriminatory reasons for the adverse employment action demonstrated in plaintiff's *prima facie* case. *Abdu–Brisson*, 239 F.3d at 468 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The defendant's burden at this step in the analysis is also "light." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." *Id.* "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). To satisfy the second step of *McDonnell Douglas*, "[i]t is sufficient if the defendant's evidence raises a genuine issue of

fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254. "If the defendant carries this burden of production, the presumption [of discrimination] raised by the *prima facie* case is rebutted," and "drops from the case." *Id.* at 255 n.10.

Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence. *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 121 (2d Cir. 1997). The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail—'either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions.'" *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000) (quoting *Fields,* 115 F.3d at 121). It is important to note, that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves,* 530 U.S. at 143 (quoting *Burdine,* 450 U.S. at 253).

### 1.    Hostile Work Environment

To state a *prima facie* claim of hostile work environment under Title VII, a plaintiff must show that "the complained of conduct:  (1) is objectively severe or pervasive, that is, the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of plaintiff's . . . characteristic protected by Title VII." *Jackson v. NYS Dept. of Labor*, No. 09 Civ. 6608 (KF), 2012 WL 843631, at *3 (S.D.N.Y. Mar. 12, 2012); *Risco*, 868 F. Supp. 2d at 115 (S.D.N.Y. 2012) (citing *La Grande v. DeCrescente Distributing Co.*, 370 F. App'x 206, 209 (2d Cir. 2010)). While acknowledging that "the standard for

establishing a hostile work environment is high," the Second Circuit has "repeatedly cautioned against setting the bar too high, noting that [w]hile a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*.'" *Feingold*, 366 F.3d at 150 (citing *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir. 2003)).  "[T]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases."  *Id.*

      To determine whether a work environment is hostile or abusive, courts look at the totality of the circumstance and consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'"  *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Forklift Sys., Inc.,* 510 U.S. at 23).  Ordinarily, isolated instances "do not rise to the level of objective hostility[.]"  *Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 402 (S.D.N.Y. 2012) (citing *Cruz v. Coach Stores*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded by regulation on separate grounds by* N.Y.C. Local L. No. 85); *see also Williams v. Cty. of Westchester,* 171 F.3d 98, 100-01 (2d Cir. 1999) (per curiam).  However, where a single incident is "extraordinarily severe" or a series of incidents are "sufficiently continuous and concerted," the conduct may be considered objectively hostile.  *Kouakou*, 920 F. Supp. 2d at 402.

      Here, Plaintiff's hostile work environment claim is based on three comments made by his manager at the 34th Street store over an eight month period:  (1) "Hey Anthony, its [sic] Ramadan right? So your [sic] hungry all day huh?"; (2) "I don't think this salad has pork in it"; and (3) "Dont [sic] be an asshole!"  Compl. III.C.; Hr'g Tr. 3:18-25.  These three comments,

14

only two of which are on their face based on Plaintiff's religion, and made over an eight month period, are not "sufficiently continuous and concerted in order to be deemed pervasive." *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (finding that the alleged five incidents of hostility over a four-year period were not actionable because while "plainly offensive . . . . they were too few, too separate in time, and too mild, under the standard so far delineated by the case law, to create an abusive working environment."); *c.f. Feingold*, 366 F.3d at 150 (denying defendant's motion for summary judgment where plaintiff had offered sufficient proof that anti-Semitic remarks were routine and the plaintiff was single out on an "almost daily" basis on account of his religion).

Moreover, even if these comments were considered "sufficiently continuous and concerted," they are not severe enough to objectively create an environment that a reasonable person would find hostile or abusive. These comments at most, amount to "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct," that do "not support a claim of discriminatory harassment." *Brodt v. City of N.Y.*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014).

In *Brodt*, the court found that a plaintiff's supervisor's comments and actions concerning plaintiff's religion—including requests that plaintiff should pray for him, that plaintiff had nine children, and the supervisor's "constant touching and rubbing" of plaintiff's yarmulke—insufficient to state a claim for hostile work environment under Title VII. *Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004)). The comments at issue here are similar to those the court found non-actionable in *Brodt* and in fact, are arguably less serious, because unlike in *Brodt*, here there are no allegations of physical contact. "Indeed, [Plaintiff's] claims do not even approach the level of conduct present in other cases where courts have found *insufficient* evidence of severe or pervasive conduct to support a hostile work environment claim." *Risco*,

15

868 F. Supp. 2d at 117-18 (S.D.N.Y. 2012) (citing *Alfano,* 294 F.3d at 379 (collecting cases));

*see also Godineaux v. LaGuardia Airport Marriott Hotel*, 460 F. Supp. 2d 413, 422-23

(E.D.N.Y. 2006) (granting summary judgment for the defendant where the plaintiff alleged that a

co-worker told plaintiff, "you know you want this butt," licked the cream cheese on his bagel

suggestively in front of plaintiff, offered plaintiff stock tips if plaintiff would sleep with him, and

attempted to kiss plaintiff, because "these few incidents occurred over a span of several

months").  Although Dickman's comments may be insensitive, "Title VII does not set forth a

general civility code for the American workplace."  *Redd v. N.Y. Div. of Parole*, 678 F.3d 166,

176 (2d Cir. 2012) (quoting *Burlington Northern Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

(2006)).  Accordingly, Plaintiff has not stated a *prima facie* case for hostile work environment,

and thus, Defendant's motion for summary judgment of this claim is GRANTED.

## 2.    Employment Discrimination

To establish a *prima facie* case for employment discrimination, Plaintiff must allege that:

"(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered

an adverse employment action; and (4) the circumstances give rise to an inference of

discrimination"  *Weinstock*, 224 F.3d at 42 (citing *McDonnell Douglas*, 411 U.S. at 802).  Here,

Plaintiff asserts that he was subject to employment discrimination based on the fact that Hispanic

delivery persons were given larger delivery orders than African American delivery persons.

Compl. III.C; May 4th Letter.   Defendant contends that Plaintiff cannot establish a *prima facie*

case for discrimination because he has not established that he is a member of a protected class,

that he suffered adverse employment action, or that an inference of discrimination exists.  Def.'s

Mem. at 6-7.  Defendant does not contest Plaintiff's qualification for his position.  *See id.*

Defendant's contention that Plaintiff fails to allege that he is a member of a protected class is incorrect.  Def.'s Mem. at 6-7; Def.'s R. Mem. at 4.  In the Complaint, Plaintiff alleges that *he* is African American.  *See* Compl. III.C ("complaining . . . about being upset *we (Black bikers / new comers)* were not receiving equal wages . . .") (emphasis added); *see also* May 4th Letter ("Several African American employees including myself . . . ").  Accordingly, Plaintiff is a member of a protected class.

Defendant also claims that Plaintiff has not established that any adverse employment action occurred.  An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation omitted).  "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Id.*  An adverse employment action is not defined "solely in terms of job termination or reduced wages and benefits . . . . less flagrant reprisals by employers may indeed be adverse."  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).  "A materially adverse change may be indicated by a termination of employment; a demotion with a decrease in wage or salary or a less distinguished title; a material loss of benefits; significantly diminished material responsibilities; or other indices unique to a particular situation."  *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 436 (S.D.N.Y. 2008).

Here, Plaintiff does not claim that he was paid less than Hispanic delivery persons but that, because he received delivery assignments that yielded fewer tips, he made less income overall.  *See* Compl. III.C; Pl.'s Opp'n at ¶ 9(a).  A juror may reasonably find that assigning African American delivery persons smaller orders resulting in smaller tips, constitutes an adverse

employment action because it results in decreased income for African American delivery persons.

The Second Circuit has identified that the final element of an employment discrimination claim, discriminatory intent, may be derived in a variety of circumstances, including, but not limited to "the more favorable treatment of employees not in the protected group." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 28, 37 (2d Cir. 1994) (internal citation omitted). In order to establish an inference of discrimination through the favorable treatment of employees not in the protected group, a plaintiff must show they were "similarly situated in all material respects to the individuals with whom he seeks to compare [himself]." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d. Cir. 2000) (internal quotations omitted) (quoting *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.* at 40; *Foss v. Coca Cola Enter.*, No. 07 Civ. 1322 (JS) (WDW), 2011 WL 1303346 at *6 (E.D.N.Y. March 31, 2011) (explaining that a plaintiff "needn't 'ha[ve] the same supervisor, work[ ] under the same standards, and engage[ ] in the same conduct.' Instead, the applicable standard requires only 'a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" )

Plaintiff alleges that Hispanic delivery persons received favorable treatment even though African American delivery persons, including Plaintiff, were supervised by the same individual and performed the same duties. *See* Compl. III.C.; May 4th Letter. This allegation is sufficient and, accordingly, Plaintiff has established all four elements of a *prima facie* case of employment discrimination.

Once Plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to introduce evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's*, 509 U.S. at 509 (emphasis in original). Here, Defendant asserts that Hispanic delivery persons were assigned delivery orders for Spanish speaking customers over other delivery persons because they spoke Spanish. Def.'s Mem. at 1, 7. Courts have found language proficiency to be a permissible reason to distinguish between employees. *See, e.g.*, *Delgado v. City of Stamford*, No. 3:11-CV-01735-VAB, 2015 WL 6675534, at *17 (D. Conn. Nov. 2, 2015) (recognizing that "having a Spanish-speaking female officer in major crimes investigation unit is an asset."); *see also Wong v. City of N.Y.*, 38 F. App'x 88, 89 (2d. Cir. 2002) ("[T]he defendants articulated a legitimate, non-discriminatory motive for Wong's termination: his limited proficiency with English . . . .") (summ. order); *de la Cruz v. N.Y. City Human Res. Admin. DSS*, 82 F.3d 16, 22 (2d. Cir. 1996) ("[A]ppellees have proffered a legitimate, non-discriminatory motive for the transfer, de la Cruz's difficulties with English."). Accordingly, Defendant provides a legitimate, nondiscriminatory reason for its adverse action against Plaintiff, and the burden shifts back to Plaintiff to establish discriminatory intent.

To fulfill his burden and defeat a motion for summary judgment, Plaintiff must demonstrate that, without the aid of the presumption of discrimination, he has "raised sufficient evidence upon which a reasonable jury could conclude by preponderance of that evidence" that Defendant's adverse employment action was based, at least in part, on the fact that he is an African American. *Holcomb*, 521 F.3d at 141. Plaintiff has not put forth any evidence to rebut Defendant's legitimate non-discriminatory reason for allocating orders. In fact, at a hearing before this Court on May 14, 2015, Plaintiff acknowledged that "Spanish-speaking people . . .

were called on more and . . . people were being skipped and the Mexican runners were being told take this bigger order because you're Mexican, *because you can speak Spanish to the people*." Hr'g Tr. 3:11-14 (emphasis added).  Accordingly, Plaintiff has not met his burden.

The Court, however, notes that no discovery at all has occurred in this action. "Generally, granting summary judgment before the parties have engaged in discovery is disfavored." *MCC Non Ferrous Trading Inc. v. AGCS Mar. Ins. Co.*, No. 14 Civ. 8302 (JCF), 2015 WL 3651537, at *3 (S.D.N.Y. June 8, 2015) (citing *Walden v. Sanitation Salvage Corp.*, No. 14 Civ. 112 (ER), 2015 WL 1433353, at *5 (S.D.N.Y. March 30, 2015); *Simmons v. Pedroza*, No. 10 Civ. 821, 2011 WL 814551, at *4 (S.D.N.Y. March 7, 2011) (collecting cases)).  The Second Circuit has held that summary judgment should only be granted if *"after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (quoting *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)) (internal quotation marks omitted).  Only in the "rarest of cases," therefore, may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery, *id.* 303-04, such as where "the nonmovant 'give[s] the . . . court no basis to conclude that further discovery would yield information that would create a genuine dispute as to material facts,'" *Cruz v. AAA Carting and Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 245 (S.D.N.Y. 2015) (citing *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)), or where "plaintiff's allegations would fail to state a claim for relief even if proven to be true."  *Mewshaw v. Police Dept., City of New York*, 493 F. Supp. 838, 840 (S.D.N.Y. 1980), *aff'd sub nom.* 639 F.2d 769 (2d Cir. 1980).[7]  Here, Plaintiff has

---

[7] Plaintiff has not filed an affidavit pursuant to Rule 56(d), which provides that "[i]f nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1)

stated a *prima facie* claim for employment discrimination and Plaintiff's Opposition suggests that discovery may create a genuine issue of material fact. For example, Plaintiff alleges that Hispanic delivery persons consistently received six times the amount of money earned in tips than African American delivery persons. Pl.'s Opp'n at ¶ 9(a).[8] Discovery into this assertion as well as Defendant's contention that larger orders were given to Hispanic delivery persons based on their language skills will bear on the factual issues in this action. *See Letscher v. Swiss Bank Corp.*, No. 94 Civ. 8277 (LBS), 1996 WL 183019, at *7 (S.D.N.Y. Apr. 16, 1996) ("Plaintiff is a layman proceeding *pro se.* There has been no discovery in this case. Therefore, the fact that plaintiff has not been able to offer any countervailing evidence must be viewed in the context of that circumstance. . . . If, after an opportunity to amplify the record, plaintiff is unable to do so, [the defendant] may renew its motion for summary judgment."). Accordingly, because no

---

defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. Pro. 56(d); *see also Miller*, 321 F.3d at 303 ("a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."). However, "[t]here is a critical distinction . . . between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery with respect to [the non-movant's] claims." *Desclafani v. Pave–Mark Corp.*, No. 07 Civ. 4639 (HBP), 2008 WL 3914881, at *7 (S.D.N.Y. Aug. 22, 2008) (quoting *Crystalline H2O, Inc. v. Orminski*, 105 F. Supp. 2d 3, 6-7 (N.D.N.Y. 2000)); *see also Hodge v. Perilli*, No. 06 Civ. 2480 (PAC) (MHD), 2010 WL 2910158, at *9 n.15 (S.D.N.Y. July 12, 2010) (excusing "the *pro se* plaintiff's failure to file the required affidavit in this case, and instead interpreting his letters to the court regarding defendants' purported discovery omissions to raise a request for Rule 56(f) relief."), *report and recommendation adopted*, No. 06 Civ. 2480 (PAC) (MHD), 2010 WL 3932368 (S.D.N.Y. Sept. 30, 2010). Here, the Court interprets Plaintiff's May 4th Letter and its Opposition as meeting the requirements of 56(d), where, as here, no opportunity for discovery occurred prior to the motion. *See Kelly v. Tan*, No. 11 Civ. 06614 (CJS), 2013 WL 4811913, at *4 (W.D.N.Y. Sept. 10, 2013) ("Although Plaintiff has not raised the issue, the Court is mindful that no discovery has yet taken place in this action, since [o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. Although the Court could deny the motion on this basis alone, it finds that the application should be denied on the merits in any event.").

[8] Other facts identified by Plaintiff include a statement in the Employee Counseling Form, Pl.'s Opp'n at ¶ 6, that states "[Plaintiff] has been transferred to this location as a second and final chance to clean up his act and respect his job[,]" Abdelsayed Aff. Ex. F, suggesting that some conversations regarding Plaintiff occurred between managers at the 34th Street location and the 58th Street location, which is relevant to Plaintiff's retaliation claims.

discovery has yet occurred and Plaintiff has stated a *prima facie* case of discrimination, Defendant's motion for summary judgment for Plaintiff's employment discrimination claims is DENIED without prejudice.

### 3.   Retaliation

Title VII also provides that it is unlawful for an employer to discriminate against any employee because the employee has opposed any practice that is an unlawful employment practice under Title VII.  42 U.S.C. § 2000e–3(a).  To establish a *prima facie* case of retaliation under Title VII, an employee must show that:  (1) he was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) he suffered a materially adverse action; and (4) there is a causal connection between his protected activity and the materially adverse action.  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).  Plaintiff claims that his transfer to another location and subsequent termination present causes of action for retaliation under Title VII.

### a)   Retaliatory Transfer

"A protected activity is one that 'protest[s] or oppose[s] statutorily prohibited discrimination.'"  *Kouakou*, 920 F. Supp. 2d at 400 (quoting *Cruz*, 202 F.3d at 566).  While a protected activity generally involves the filing of a formal complaint of discrimination with an administrative agency, *see Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992), the Second Circuit has recognized that a protected activity includes the action at issue here:  "informal protests of discriminatory employment practices, including making complaints to management."  *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).  Such informal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII.  *See, e.g.*, *Thomas v. iStar Fin.*, 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006) ("[C]omplaints centered on general allegations of harassment unrelated to race [

] are not protected activity under Title VII.").  However, "[a]n employee 'need not establish that the conduct []he opposed was in fact a violation of Title VII,' but rather, only that []he had a 'good faith, reasonable belief' that the underlying employment practice was unlawful." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996).  Here, Plaintiff's complaints regarding African Americans purportedly receiving unequal income were specific and made to the management of 34th the Street store.  *See* Compl. III.C; *supra* at Section IV(B)(2).  Accordingly, Plaintiff has shown that his complaints to Dickman about wage discrimination may reasonably be considered protected activities under Title VII.

The second element of a retaliation claim—that the defendant was aware of the protected activity—is also satisfied.  Defendant acknowledges that the store manager, Dickman, was aware of Plaintiff's complaints.  *See* Def.'s Mem. at 3 ("[Dickman] took these complaints very seriously, and held a meeting with the messengers in order to determine whether there was any merit to the claims.").

The third element of a retaliation claim requires the plaintiff to establish that he suffered a materially adverse employment action.  In the context of a retaliation claim, an action is materially adverse when "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern*, 548 U.S. at 68.  The Second Circuit has held that an employment action is not materially adverse when a plaintiff presents no evidence that the disciplinary action was "anything other than [Defendant]'s 'enforce[ment] [of] its preexisting disciplinary policies in a reasonable manner.'"  *Rivera v. Rochester Genesee Regional Transp. Authority*, 743 F.3d 11, 26 (2d Cir. 2012).  However, where a plaintiff is threatened with the loss of his job if he continues to file complaints against his employer, a reasonable person may find that this would "dissuade[ ] a reasonable worker from making or

23

supporting a charge of discrimination" and is thus, an adverse action.  *Id.* (quoting *Burlington*

*Northern*, 548 U.S. at 68).  Although Plaintiff was not threatened with the loss of his job, he

alleges that he was transferred to the 58th Street location because he would earn even fewer tips

there than the 34th Street location.  *See* Compl. III.C ("well since you think you made more

money at another store, were gonna put you at 86th St."); *see also* Pl.'s Opp'n at ¶ 6 ("You think

we don't tips [sic] here? We are going to send you to 58th Street."); *id.* at ¶ 9(b) ("We are sending

you to 58th Street, see how many tips you get there.").[9]  Accordingly, a reasonable juror may find

that transferring Plaintiff to a different location resulting in fewer tips and thus, lower income

overall, would "dissuade[ ] a reasonable worker from making or supporting a charge of

discrimination."  *Rivera*, 743 F.3d at 26.

       The final element of employment discrimination is that the adverse employment action—

the transfer—must have a causal relationship to the protected activity—complaints to

management regarding income discrepancies between delivery persons.  A causal connection

between the protected activity and the adverse employment action may be directly pled or pled

by circumstantial evidence, including that the protected activity was closely followed in time by

the adverse action.  *See Feingold*, 366 F.3d at 156-57 (citing *Cifra v. G.E. Co.*, 252 F.3d 205,

216 (2d Cir. 2001)); *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).

       Plaintiff alleges that he was *told* he was being transferred to the 58th Street store because

of his complaints to management about the income discrepancies, *see* Compl. III.C; Pl.'s Opp'n

at ¶¶ 6, 9(b), and that the transfer occurred at a week after Plaintiff met with management

regarding his complaints.  Compl. III.C; *see also* May 4th Letter.  Statements, discussed *supra*,

---

[9] Defendants argue that Plaintiff changed his version of this confrontation in his Opposition to better fit his retaliatory transfer claim.  Def.'s R. Mem. at 9.  While the Court recognizes that Plaintiff's allegations regarding precisely what was said has changed, all three statements support the plausible inference, when viewed in favor of the non-moving party, that Plaintiff was transferred because he would earn less tips at the 58th Street location.

that Dickman and another manager told Plaintiff that he was being transferred because of his complaints establish a connection between the adverse action and his transfer.  The fact that Plaintiff was transferred approximately one week after the meeting was held, further supports Plaintiff's allegations.  *See Raniola v. Bratton*, 243 F.3d 610, 627-28 (2d Cir. 2001) (Finding that an adverse employment action taken one week after conducting a protected activity was sufficient to draw an inference of discrimination.); *see also Dean v. Westchester Cty. Dist. Attorney's Office*, 119 F. Supp. 2d 424, 432 (S.D.N.Y. 2000) ("[B]ecasue the termination occurred within one week of the [protected activity], a causal connection has been established."). Accordingly, taken together, these allegations support Plaintiff's assertion that a causal relationship between the adverse action and the protected activity exists.

Because Plaintiff has established a *prima facie* case of retaliation, the burden of production shifts to the Defendant to offer a "legitimate, non-retaliatory reason for the adverse employment action."  *Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 341 (D. Conn. 2013). If one is offered, "the burden shifts back to the plaintiff to show that the defendant's articulated reason is a pretext for retaliation."  *Id.*  "To establish pretext in the retaliation context, a plaintiff may demonstrate 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.'"  *Delgado*, 2015 WL 6675534, at *23.  The fact that "the protected activity was closely followed in time by the adverse action," *Cifra*, 252 F.3d at 217, may support a finding of pretext but "without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext."  *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir.2010).

Defendant alleges that Plaintiff was transferred to the 58th Street location not because of his complaints to management, but because the manager of the 58th Street store "was having

trouble finding an additional delivery person."  Def.'s Mem. at 3; *see also* Abdelsayed Aff. ¶ 12; Pl.'s Opp'n at ¶ 7.  As discussed, however, Plaintiff was transferred one week after the meeting at 34th Street store.  Moreover, the Employee Counseling Form attached by Defendant to its motion would appear to contradict its purported non-retaliatory reason for transferring Plaintiff; the form states that "[Plaintiff] has been transferred to this location as a second and final chance to clean up his act and respect his job."[10]  Abdelsayed Aff. Ex. F.   Based on this record, a reasonable juror could find that Plaintiff was transferred in retaliation for his complaints to management.  Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claim for transferring Plaintiff to the 58th Street store is DENIED without prejudice.

### b)      Retaliatory Termination

Plaintiff also asserts that his termination was in retaliation for his complaints regarding wage discrepancy.  As stated *supra* at Section IV(B)(3)(a), Plaintiff has sufficiently established the first factor for a *prima facie* retaliation claim—that Plaintiff was engaged in a protected activity—in relation to his transfer.  The same activity—Plaintiff's complaints regarding wage discrepancies at the 34th Street location—supports the retaliatory termination claim.  The second, third, and fourth factors, however are different between Plaintiff's two retaliation claims.

In connection with Plaintiff's retaliatory termination claim, Defendant contends that the 58th Street manager had no knowledge of the protected activity, *i.e.*, his prior complaints regarding the 34th Street store, and thus, Defendant was not aware of the protected activity.  *See* Abdelsayed Aff. ¶ 12 ("Until the commencement of this lawsuit, I was unaware that plaintiff had made complaints regarding his salary and/or the distribution of orders at the location where he previously worked.").  The Second Circuit has held, however, that in order to satisfy the knowledge requirement nothing "more is necessary than *general corporate knowledge* that the

---

[10] The Court acknowledges that these two competing rationales are not necessarily mutually exclusive, however.

plaintiff has engaged in a protected activity." *Gordon*, 232 F.3d at 116 (emphasis added).  As a manager of one of Defendant's locations, Dickman's knowledge of Plaintiff's complaints is sufficient to establish general corporate knowledge of the protected activity.  *See Campbell v. Home Depot U.S.A., Inc.*, No. 03 Civ. 1421 (KMK) (HBP), 2006 WL 839001, at *15 (S.D.N.Y. March 30, 2006) (Held that an employee's complaints of harassment to a store manager no longer employed at the time of her termination was sufficient to establish general corporate knowledge.).

Regarding the third factor, there is no dispute that termination is considered an adverse employment action.  *See Feingold*, 366 F.3d at 156 ("he suffered an adverse employment action when he was fired").  However, Plaintiff must also show that his termination was a result of his complaints at the 34th Street store.  As discussed *supra*, a causal connection may be directly pled or pled by circumstantial evidence, including that the protected activity was closely followed in time by the adverse action.  *See Kalola v. Int'l Bus. Mach. Corp.*, No. 13 Civ. 7339 (VB), 2015 WL 861718, at *8 (S.D.N.Y. Feb. 3, 2015).  Plaintiff was fired from the 58th Street store ten days after he was transferred.  *See* Abdelsayed Aff.  Based on the temporal proximity of Plaintiff's termination in combination with the comment in the Employee Counseling Form discussed *supra*, a factual question exists whether there is a causal connection between Plaintiff's protected activity and his termination.

Because Plaintiff establishes a *prima facie* case for retaliation, Defendant must put forward a "legitimate, nondiscriminatory reason" for Plaintiff's termination.  Defendant alleges that Plaintiff was terminated because he violated company policies four times in the ten days he was employed at the 58th Street location by twice showing up late, not showing up at all on one occasion, and once clocking in early while out of uniform.  Def.'s Mem. at 12; *see also*

Abdelsayed Aff. ¶¶ 5-11.  Where, as here, the burden returns to the plaintiff in a retaliation case, plaintiff must "offer[] evidence to show pretext or to create a triable issue of material fact as to whether the negative review and termination 'would not have occurred in the absence of the alleged wrongful action or actions of the employer.'"  *Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 74 (2d Cir. 2014) (quoting *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 133 S. Ct. 2517, 2533 (2013)).  Here, Plaintiff does not dispute that he was late, that he clocked in early, or that he failed to show up for work one day.  *See* Compl. III.C; May 4th Letter; Pl.'s Oppn. ¶¶ 4, 5, 8. Instead, Plaintiff explains his behavior and claims that other employees were not disciplined for similar conduct.  This alone does not create a triable issue of material fact as to Defendant's discriminatory intent.  However, for the reasons explained in Section IV(B)(2), because there has been no discovery on this issues and Plaintiff has stated a *prima facie* claim for retaliation, this claim may not be dismissed on summary judgment.  Accordingly, Defendant's motion for summary judgment for Plaintiff's claim of retaliatory termination is DENIED without prejudice.

V.     **Conclusion**

For the reasons stated above, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.   Defendant's motion on Plaintiff's Equal Pay Act claim and hostile work environment claim is GRANTED, and Defendant's motion on Plaintiff's employment discrimination claims and retaliation claims are DENIED without prejudice.   The parties are directed to appear for a status conference on April 28, 2016 at 11:30 am.   At that time, the parties will submit a joint proposed Discovery Plan and Scheduling Order which may be found at nysd.uscourts.gov/judge/Ramos.   The Clerk of the Court is respectfully directed to terminate the motion, Doc. 13.

It is SO ORDERED.

Dated:     March 17, 2016
           New York, New York

Edgardo Ramos, U.S.D.J.