UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY SOLLAZZO,

       Plaintiff,

- against -

JUST SALAD RESTAURANT,

       Defendant.

**OPINION AND ORDER**

15 Civ. 0252 (ER)

Ramos, D.J.:

  Anthony Sollazzo filed a *pro se* complaint bringing claims pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII") against his former employer, Just Salad Restaurant, for employment discrimination based on race, hostile work environment based on religion, and retaliation based on Plaintiff's complaints to management about the alleged discrimination. On March 17, 2016, the Court granted summary judgment in favor of Defendant with respect to Plaintiff's Equal Pay Act claim and Title VII hostile work environment claim. Doc. 22 (the "March 2016 Order") at 29. Before the Court is Defendant's motion for summary judgment with respect to Plaintiff's remaining Title VII discrimination and retaliation claims. Doc. 42. For the reasons discussed below, Defendant's motion is GRANTED in part, and DENIED in part.

**I. Factual Background**[1]

  Defendant hired Plaintiff, an African American Muslim man, as a bicycle delivery person in March 2013. *See* Defendant's Rule 56.1 Statement ("Def.'s 56.1") ¶¶ 19, 54. After

---

[1] The following facts are drawn from the Complaint ("Compl."), Doc. 2, Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1"), Doc. 47, and other evidence in the record submitted by

completing training, Plaintiff was sent to work at Defendant's 37th Street store. Def.'s 56.1 ¶ 20. Plaintiff worked there for one month, before quitting to work for Dunkin Donuts as a cashier and sandwich maker. *Id.* ¶ 21–22. Plaintiff quit his job at Dunkin Donuts one month later and returned to work at Defendant's 37th Street store in May 2013. *Id.* ¶¶ 23–25. During the relevant time period, Matthew Dickman was the manager of the 37th Street store and Jaime Bermejo was the delivery manager. Def.'s 56.1 ¶ 2–3.

Plaintiff alleges in his pleadings, and testified in his deposition, that African American delivery persons at the 37th Street store earned less than Hispanic delivery persons because Hispanics were given larger deliveries resulting in higher tips than African Americans. *See* Compl. at 3–4; Doc. 12 (the "May 4th Letter"); Declaration of Michael A. Miranda ("Miranda Decl."), Ex. C 53:6-12, 60:8-15. Plaintiff testified that he requested a meeting with Dickman to discuss his concerns about the way deliveries were assigned. Miranda Decl., Ex. C. 63:5–66:7. Plaintiff and several other delivery persons eventually met with Dickman and another store manager of Asian descent during the first week of November 2013 and voiced their concerns. *Id.* Plaintiff testified that approximately one week after the meeting, he complained to Dickman and the other manager that changes had not been made and that Hispanic delivery persons continued to be assigned larger deliveries. *See id.* at 68:8–15. According to Plaintiff, the manager of Asian descent laughed and told him that they were going to send him to another store

---

Defendant, including a transcript of Plaintiff's deposition testimony. In opposing Defendant's motion, Plaintiff filed a one-and-a-half page memorandum and four pages of evidence. *See* Doc. 49. Plaintiff neither addressed Defendant's Rule 56.1 statement nor submitted his own statement of undisputed facts. *See id.* Nevertheless, the Court must consider all admissible evidence in the record in deciding whether Defendant is entitled to summary judgment. *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 399 (S.D.N.Y. 2006); *see also Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.").

2

so that he could "really see" that delivery persons made more money in tips at the 37th Street store than at other Just Salad locations. *Id*. at 68:21–69:7.

Shortly thereafter, on November 10, 2013, Plaintiff was transferred to Just Salad's Third Avenue store, which was located at the intersection with 58th Street. Def.'s 56.1 ¶ 37; Miranda Decl. 68:2–6, 70:4–6; Affidavit of Mina Abdelsayed ("Abdelsayed Aff.") ¶ 5. Plaintiff alleges that he was transferred in retaliation for complaining to management about the discriminatory practice of assigning larger deliveries to Hispanic delivery persons. *See* Compl. at 3–4. Defendant, however, asserts that Plaintiff was transferred because the Third Avenue store had difficulty finding delivery persons to work there. Def.'s 56.1 ¶ 40.

Plaintiff was not employed at the Third Avenue store for long. On November 10, 2013, his first day of work at the Third Avenue store, Plaintiff arrived one hour late. *Id*. at ¶ 45. An incident report was filed and a manager reprimanded Plaintiff. Abdelsayed Aff. ¶ 6; Def.'s 56.1 ¶ 51. Three days later, on November 13, Plaintiff did not show up for work at all and received another warning. Def.'s 56.1 ¶¶ 52–54. On November 18, Plaintiff arrived to the store ten minutes before his shift was scheduled to start and, while out of uniform, clocked in early, in violation of Defendant's policy. *Id*. at ¶¶ 61–64. Plaintiff was given a final warning. *Id.* The next day, on November 19, Plaintiff arrived to work one hour late and was immediately terminated by Mina Abdelsayed, the manager of the Third Avenue store. *Id*. at ¶¶ 65–67. Plaintiff claims that he was fired in retaliation for complaining about Defendant's discriminatory delivery assignment system favoring Hispanic delivery persons. Compl. at 3.

## II. Procedural Background

Plaintiff brought this action on January 13, 2015, and Defendant filed a motion to dismiss on June 4, 2015. Doc. 2; Doc. 13. Because Defendant's motion to dismiss relied on materials

extrinsic to Plaintiff's complaint, the Court converted it into a motion for summary judgment after determining that the parties had sufficient notice regarding (1) the possibility that the motion could be converted to a motion for summary judgment, and (2) the consequences of such a conversion. March 2016 Order at 5–7. In its March 2016 Order, the Court granted summary judgment in favor of Defendant with respect to Plaintiff's Equal Pay Act claim and hostile work environment claim. *Id*. at 29. However, the Court denied summary judgment with respect to Plaintiff's Title VII employment discrimination and retaliation claims, without prejudice. *Id*.

The parties completed discovery on April 13, 2017. *See* Minute Entries dated January 13, 2017 and April 14, 2017. Defendant moved for summary judgment with respect to Plaintiff's remaining claims on May 15, 2017. Doc. 42.

### III. Standard of Review

#### A. General Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the litigation under the governing law." *Id.* (quoting *Miner v. Clinton County N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*,

706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).

### B. Additional Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir.

2008); however, "[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation." *Hongyan Lu v. Chase Investment Services Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011) (summ. order) (quoting *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000)). Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)). Furthermore, "[e]ven in the discrimination context, [ ] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137; *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). A "nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir.2005) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).

    **C.    Special Solicitude for *Pro se* Litigants**

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988)). *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621 (SS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.2006)

6

(quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Whitley v Albers*, 475 U.S. 312, 319 (1986)). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**IV.     Discussion**

Defendant moves for summary judgment with respect to Plaintiff's two remaining claims: discrimination and retaliation in violation of Title VII. Def.'s Mem. at 1. Plaintiff's Title VII claims are properly analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (applying *McDonnell Douglas* to retaliation claim). Under the *McDonnell Douglas* framework, a plaintiff alleging discrimination under Title VII must first demonstrate a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The Second Circuit has explained that a plaintiff's burden at this stage is *de minimis*. *Abdu-Brisson*, 239 F.3d at 467. Nonetheless, in order to state a *prima facie* case for discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd,* 51 F. App'x 55 (2d Cir. 2002), and "cannot meet its burden through reliance on unsupported assertions." *Goenaga,* 51 F.3d at 18. "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corp.*, 103 F.

Supp. 2d 297, 308 (S.D.N.Y. 2000) (quoting *Bikerstaff v. Vassar College*, 196 F.3d 435, 451-52 (2d Cir. 1999)). "A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge," is also insufficient. *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Civ. 9959 (WP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008).

If a plaintiff successfully presents a *prima facie* case of discrimination, the defendant must then rebut the presumption by offering legitimate and non-discriminatory reasons for the adverse employment action demonstrated in plaintiff's *prima facie* case. *Abdu-Brisson*, 239 F.3d at 468 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). To satisfy the second step of *McDonnell Douglas*, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254. "If the defendant carries this burden of production, the presumption [of discrimination] raised by the *prima facie* case is rebutted," and "drops from the case." *Id.* at 255 n.10.

Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence. *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir. 1997). The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail—'either by proving that a discriminatory motive, more likely than not, motivated the

defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions.'" *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (quoting *Fields,* 115 F.3d at 121). It is important to note, that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine,* 450 U.S. at 253).

    **1.**    **Discrimination Claim**

        **a)**    ***Prima Facie*** **Case of Discrimination**

To meet the burden of production required for a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138). Here, Plaintiff asserts that he was subject to employment discrimination based on the fact that Hispanic delivery persons were given larger delivery orders than African American delivery persons. Compl. at 3–4; May 4th Letter. Defendant does not dispute that Plaintiff is a member of a protected class and was qualified for his position. Rather, Defendant argues that Plaintiff has failed to establish a *prima facie* case for discrimination because he has not presented any evidence that (1) he suffered an adverse employment action or (2) the adverse action took place under circumstances giving rise to an inference of discrimination. Def.'s Mem. at 8–12. The Court addresses both arguments in turn.

### i. Adverse Employment Action

An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation omitted). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* An adverse employment action is not defined "solely in terms of job termination or reduced wages and benefits . . . . less flagrant reprisals by employers may indeed be adverse." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). "A materially adverse change may be indicated by a termination of employment; a demotion with a decrease in wage or salary or a less distinguished title; a material loss of benefits; significantly diminished material responsibilities; or other indices unique to a particular situation." *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 436 (S.D.N.Y. 2008).

Here, Plaintiff does not claim that he suffered an adverse employment action because he was paid less than Hispanic delivery persons. Rather, he claims that Hispanic delivery persons received larger orders that typically yielded greater tips, and as a result, made more money than African Americans. *See* Compl. at 3–4; May 4th Letter; Doc. 19 at 4. Defendant contends that receiving less favorable assignments is not sufficient to constitute an adverse employment action, even if it resulted in smaller tips and less overall income. Def.'s Mem. at 8–9. The Court already rejected this argument in its March 2016 Order, concluding that "[a] juror may reasonably find that assigning African American delivery persons smaller orders resulting in smaller tips, constitutes an adverse employment action because it results in decreased income for African American delivery persons." March 2016 Order at 17–18.

In renewing the argument in its instant motion, Defendant relies on a discrimination case brought by a restaurant server in which the Second Circuit held that "*isolated* incidents of adverse treatment in scheduling and table assignments, and resulting loss of tips and wages . . . do not rise to the level of [an adverse employment action]." *Rowe v. Jagdamba, Inc.*, 302 F. App'x 59, 62 (2d Cir. 2008) (emphasis added). Defendant, however, ignores that *Rowe* also stands for the proposition that "[in] a profession where wage is determined almost solely by tips, the *consistent* decision to place the plaintiff in a section with fewer customers than anywhere else could amount to a decreased wage, and, if combined with other disadvantages, could rise to the level of an adverse employment action." *Id.* (emphasis added) (citation and internal quotation marks omitted). Thus, it is apparent that the Court's determination that the restaurant server did not experience an adverse employment action was primarily based on the isolated nature of the less favorable assignments. Here, Defendant seems to contend that *Rowe* stands for the proposition that receiving less favorable assignments yielding smaller tips can *never* be the basis of an adverse employment action, which is an inaccurate characterization of *Rowe*. Accordingly, the Court is unpersuaded by Defendant's argument and reaffirms its March 2016 decision that Defendant's alleged practice of awarding more favorable delivery assignments to members of a certain group, resulting in larger tips, can amount to an adverse employment action.

### ii. Inference of Discrimination

"Because an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). Thus, the Second Circuit has held that a plaintiff may establish a *prima facie* case of discrimination by showing that he experienced an

adverse employment action under circumstances giving rise to an inference of discrimination. *See id*. A plaintiff may raise such an inference by showing that his employer "subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d. Cir. 2000).

When seeking to establish a *prima face* case by reference to the disparate treatment of a similarly situated employee, "the plaintiff must show that [he] shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). "This means that such an employee must be similarly situated in all material respects—not in all respects and that a plaintiff is not obligated to show disparate treatment of an identically situated employee." *Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d 419, 426 (S.D.N.Y. 2010) (quoting *McGuinness*, 263 F.3d at 54) (internal quotation marks omitted). Further, such employee "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Id.* (quoting *McGuinness,* 263 F.3d at 54) (internal quotation marks omitted). Employment characteristics which can support a finding that two employees are "similarly situated" include "similarities in education, seniority, performance, and specific work duties," *DeJesus v. Starr Technical Risks Agency, Inc.*, 03 Civ. 1298 (RJH), 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004), and similar requirements for skill, effort, and responsibility for jobs performed "under similar working conditions." *DeJohn v. Wal-Mart Stores E., LP*, 09 Civ. 01315 (GTS), 2013 WL 1180863, at *6 (N.D.N.Y. Mar. 20, 2013); *see also Graham*, 230 F.3d at 40 (2d Cir. 2000) ("What constitutes 'all material respects . . . varies somewhat from case to case," but "there should be an 'objectively identifiable basis for comparability.'") (citations omitted). This is generally a question of fact for the jury, but "[t]his rule is not absolute,

12

however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Britt v. Merrill Lynch & Co., Inc.*, 08 Civ. 5356 (GBD), 2011 WL 4000992, at *6 (S.D.N.Y. Aug. 26, 2011) (quoting *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir. 2007)) (internal quotation marks omitted).

Plaintiff's discrimination claim is based on his allegation that Hispanic delivery persons received more favorable assignments even though they were supervised by the same individual and performed the same duties. *See* Compl. at 3–4. In its March 2016 Order, the Court concluded that Plaintiff had sufficiently plead an inference of discrimination because he was similarly situated to Hispanic delivery persons who received more favorable delivery assignments. *See* March 2016 Order at 15–16. Now that the parties have completed discovery, Defendant contends that Plaintiff does not meet the "similarly situated" requirement because he has failed to adduce evidence that he had similar seniority and experience as the allegedly favored delivery persons. *See* Def.'s Mem. at 10–12. According to Defendant, Plaintiff was unable to identify which Hispanic delivery persons received more favorable delivery assignments during his deposition, and was similarly unable to describe the seniority or experience of the favored delivery persons. *See* Def.'s Mem. at 10. Thus, Defendant argues, Plaintiff cannot prove that similarly situated delivery persons in terms of seniority and experience were treated more favorably than him. *Id*. at 11.

Defendant's characterization of the record is inaccurate. The record contains evidence that the Hispanic delivery persons who received more favorable delivery assignments had varying levels of seniority and experience, suggesting that seniority and experience are not appropriate factors with which to measure whether Plaintiff was similarly situated to the favored individuals. In his deposition, Plaintiff testified that Bermejo gave more favorable delivery

13

assignments to a group of four or five Hispanic delivery persons that walked home together with Bermejo at the end of the day. Miranda Decl., Ex. C 54:17–56:5. In his declaration, Dickman states that most delivery persons at the 37th Street store had worked there for less than a year. Dickman Decl. ¶ 10. According to Dickman, the only delivery persons who had worked at the store for over a year were two individuals of Mexican descent, two individuals of Chinese descent, and another individual of unspecified ethnicity who was terminated due to customer complaints. *Id*. ¶¶ 8–10. Bermejo similarly stated in his declaration that most delivery persons worked at Just Salad for a few months before moving on to other jobs, with the exception of two delivery persons of Mexican descent—Mr. Flores and Mr. Gonzalez—and two delivery persons of Chinese descent. Bermejo Decl. ¶¶ 4–6. Thus, as a matter of arithmetic, the group of four or five Hispanic delivery persons that Plaintiff testified received more favorable assignments must have represented varying levels of seniority and experience, since only Mr. Flores and Mr. Gonzalez had worked at the 37th Street store for more than one year and all other Hispanic delivery persons had worked there for a period of months like Plaintiff.

Because there is evidence that the allegedly favored delivery persons had worked at the 37th Street store for varying lengths of time, granting summary judgment to Defendant on the ground that Plaintiff cannot prove that he was "similarly situated" to the comparators would be inappropriate. As the Court suggested in its March 2016 Order, Plaintiff is able to survive summary judgment if there is evidence that he and the favored delivery persons had similar duties and were supervised by the same individuals. March 2016 Order at 15. The record contains such evidence. *See* Bermejo Decl. ¶¶ 1–2, 8; Dickman Decl. ¶¶ 1–2, 11; Miranda Decl., Ex. C 52:19–54:4. Accordingly, a juror may reasonably find that Plaintiff raises an inference of

14

discrimination because he was similarly situated to Hispanic delivery persons that received more favorable assignments.

### b) Defendant's Proffered Nondiscriminatory Reason

Once Plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to Defendant to introduce evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's*, 509 U.S. at 509 (emphasis in original). Orders at the 37th Street store are typically assigned for delivery based on a list system: once an order is packaged and ready for delivery, Bermejo hands it off for delivery to the next available delivery person on the list. Def.'s 56.1 Statement ¶ 11. Defendant admits that large orders are sometimes assigned to delivery persons who are not next on the list. *Id*. at ¶ 14. Defendant contends, however, that it had a legitimate, non-discriminatory reason for giving larger orders to certain delivery persons: their established track-record as reliable delivery persons based on their years of experience working with Bermejo. In his declaration, Bermejo states that he sometimes holds large orders from the typical assignment system and gives them to delivery persons who have worked with him for a long period of time because they are "familiar with the area, treat the customers respectfully and make the deliveries quickly and reliably." Bermejo Decl. ¶ 9. Bermejo also states that "newer delivery people will often take longer to make the deliveries and can have trouble finding certain buildings, particularly if they are not familiar with the area." *Id*. at ¶ 10. According to Defendant, "there is nothing discriminatory about Mr. Bermejo relying on employees that he had worked with, and who had proven themselves to be reliable over a long period of time." Def.'s Mem. at 13.

Defendant's purportedly legitimate, non-discriminatory reason for assigning larger orders to certain delivery persons does not address the extent of Plaintiff's claim and testimony.

15

Plaintiff testified in his deposition that at least four or five Hispanic delivery persons received more favorable delivery assignments in the form of larger orders. *See* Miranda Decl., Ex. C 54:17-56:5. Moreover, other parts of Plaintiff's deposition can be interpreted to mean that Bermejo generally reserved larger orders for *all* Hispanic delivery persons.[2] *See* Miranda Decl. 60:8–15 (Q: When Jaime would give a large order to a Hispanic person, was it typically the next Hispanic person there or did he call specific people? A: If that Spanish person was the only one, then it would be him. If there was more, then he would go specifically to, I guess, the one who was next out of them."). However, as noted above, the record indicates that only two Hispanic delivery persons, Mr. Flores and Mr. Gonzalez, had worked with Bermejo for any significant length of time. The other Hispanic delivery persons had worked at the 37th store for only a period of months. *See* Dickman Decl. ¶¶ 8–10; Bermejo Decl. ¶¶ 4–6. While Defendant's proffered nondiscriminatory reason may explain why Bermejo gave larger orders to Mr. Flores and Mr. Gonzalez, it cannot explain why Bermejo gave larger orders to Hispanic delivery persons who had only worked with him for a few months. Taken as true, therefore, the evidence submitted by Defendant cannot permit the conclusion that it gave more favorable assignments to Hispanic delivery persons for a nondiscriminatory reason. Accordingly, Defendant fails to meet its burden of production at the second step of the *McDonnell Douglas* framework and its motion for summary judgment with respect to Plaintiff's discrimination claim is DENIED.

---

[2] Plaintiff also testified that all Just Salad locations, which would necessarily include the 37th Street store, generally favored Hispanic delivery persons. *See* Miranda Decl. 24:17–25:8 (Q: You said certain guys would get the large orders. Which guys were those? Can you describe them? [. . .] Just to remind you, we are talking about the 23rd Street and Sixth Avenue store. A: This problem occurs throughout the companies. [. . .] Q: Was it specific Hispanic riders that would get this order or any Hispanic rider? A: I would say any Spanish-speaking, I believe it was a favoritism thing . . . .).

## 2. Retaliation Claim

Title VII provides that it is unlawful for an employer to discriminate against any employee because the employee has opposed any practice that is an unlawful employment practice under Title VII. 42 U.S.C. § 2000e–3(a). Plaintiff claims that Defendant retaliated against him by transferring him from the 37th Street store to the Third Avenue store after he complained that African American delivery persons made less money than Hispanic delivery persons. Compl. at 3–4. He claims that Defendant also retaliated against him for the same reason by terminating his employment after transferring him to the Third Avenue store. *Id*. To establish a *prima facie* case of retaliation under Title VII, an employee must show that: (1) he was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) he suffered a materially adverse action; and (4) there is a causal connection between his protected activity and the materially adverse action. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

With respect to Plaintiff's claim that Defendant retaliated against him by transferring him to the Third Avenue store, Defendant contends that Plaintiff has failed to establish a *prima facie* case because a transfer at the same pay is not an adverse action. Def.'s Reply ay 5. The Second Circuit has held that a transfer of an employee to a new location can constitute an adverse employment action when it is "a change in working conditions . . . more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya*, 202 F.3d at 640 (internal quotation omitted). As such, even "[a] lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way." *Patrolmen's Benevolent Ass'n of City of N.Y v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002); *see also Lore*, 670 F.3d

17

at 170 ("The transfer of an employee from an 'elite' position to one that is 'less prestigious . . . with little opportunity for professional growth' is sufficient to permit a jury to infer that the transfer was a materially adverse employment action.") (quoting *De la Cruz v. New York City Human Resources Administration*, 82 F.3d 16, 21 (2d Cir. 1996)). The record is devoid of any information indicating how the transfer to the Third Avenue store impacted Plaintiff. Indeed, there is no evidence or suggestion that the transfer involved any difference in pay, responsibilities, or any other factor that would indicate that he was adversely affected.[3] Because there is no support in the record that Plaintiff's transfer was an adverse employment action, Plaintiff has failed to establish a *prima facie* case of retaliation as it relates to his transfer and Defendant's motion for summary judgment is GRANTED.

In connection with Plaintiff's retaliatory termination claim, Defendant contends that Plaintiff has failed to establish a *prima facie* case because there is no evidence that the Third Avenue manager was aware of the protected activity, *i.e.*, his prior complaints regarding the 37th Street store, and thus, Defendant was not aware of the protected activity. *See* Def.'s Mem. at 15; Def.'s 56.1 ¶ 41–44. The Second Circuit has held, however, that in order to satisfy the knowledge requirement nothing "more is necessary than *general corporate knowledge* that the plaintiff has engaged in a protected activity." *Gordon*, 232 F.3d at 116 (emphasis added). As a manager of one of Defendant's locations, evidence of Dickman's knowledge of Plaintiff's complaints is sufficient to establish general corporate knowledge of the protected activity. *See Campbell v. Home Depot U.S.A., Inc.*, No. 03 Civ. 1421 (KMK) (HBP), 2006 WL 839001, at *15 (S.D.N.Y. March 30, 2006) (holding that an employee's complaints of harassment to a store

---

[3] While Plaintiff testified that one of the managers of the 37th Street store told him that he was being transferred so that he could "really see" that delivery persons made more money in tips at the 37th Street store than at other Just Salad locations, Miranda Decl., Ex. C 68:21–69:7, Plaintiff has not alleged—and the record does not support—that he earned fewer or smaller tips at the Third Avenue store.

manager no longer employed at the time of her termination was sufficient to establish general corporate knowledge.). As such, there is sufficient evidence in the record for Plaintiff to establish a *prima facie* case of retaliation.

Defendant further contends that even if Plaintiff is able to establish a *prima facie* case, it is entitled to summary judgment because Plaintiff was terminated for a legitimate, nondiscriminatory reason and he has failed to present evidence to support that the reason is pretextual. Def.'s Mem. at 17. According to Defendant, Plaintiff's employment was terminated "because of well-documented infractions at the 3rd Avenue location." *Id.* Specifically, Defendant points to evidence indicating that over the course of his first week at the Third Avenue store, Plaintiff (1) arrived late for his first shift, (2) failed to show up at all for another shift, (3) clocked in before he was ready to work another shift, and (4) arrived late for another shift. Def.'s 56.1 ¶¶ 45–67. In his affidavit, Abdelsayed states that he immediately terminated Plaintiff after his fourth infraction in a little over one week of working at the Third Avenue store. Abdelsayed Decl. at ¶ 11. This rationale easily satisfies Defendant's burden at this second step of the analysis.

Where, as here, the burden returns to the plaintiff in a retaliation case, a plaintiff must "offer[] evidence to show pretext or to create a triable issue of material fact as to whether the . . . termination 'would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 74 (2d Cir. 2014) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013)). Plaintiff's deposition testimony is consistent with Defendant's assertion that he was fired because he committed four infractions within his first eight days at the Third Avenue store.[4] Moreover, the record does not otherwise

---

[4] With respect to the first infraction, Plaintiff testified that, even though he was always scheduled to start his shift at 10 a.m. at the 37th Street store, he did not know what time he was supposed to start at the Third Avenue store on his

19

contain evidence suggesting that Defendant's proffered reason for terminating Plaintiff is pretextual. Accordingly, Plaintiff has failed to create a triable issue of material fact as to Defendant's discriminatory intent in terminating his employment, and Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim is GRANTED.

V.  **Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Defendant's motion with respect to Plaintiff's Title VII retaliatory termination claim is GRANTED, and Defendant's motion with respect to Plaintiff's Title VII discrimination claim is DENIED. The parties are directed to appear for a status conference on April 4, 2018 at 11:30 a.m. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 42.

It is SO ORDERED.

Dated:  March 2, 2018
        New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.

---

first day and arrived sometime in the afternoon. Miranda Decl., Ex. C 47:16–19; 72:16–73:24. He admitted, however, that he did not attempt to find out what time he was supposed to arrive on his first day. *Id.* at 72:16–73:9. With respect to the second infraction, Plaintiff testified that he did not show up for work because he does not work on Fridays for religious reasons, but admitted that he did not notify any of the managers at the Third Avenue store that he was unable to work that day. *Id.* at 86:4–89:8. With respect to the third infraction, Plaintiff admitted that he clocked in ten minutes before his shift was due to start and that he was not wearing his uniform. *Id.* at 89:18–90:5. With respect to the fourth infraction, Plaintiff admitted that he was late, but testified that he believed he was scheduled to start an hour later. *Id.* at 90:25–91:20.